IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES KALLASSY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0727-N |
| | § | |
| CIRRUS DESIGN CORPORATION, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgement, filed June 24, 2005. Because Plaintiff does not produce the evidence required to prove either defect or causation for his product liability claims, the Court grants the motion for summary judgement.

## I. BACKGROUND

### A. Procedural History

Plaintiff Charles Kallassy owned and flew a Cirrus SR22 aircraft (the "SR22") between June 2001 and March 2003. Defendant Cirrus Design Corporation ("Cirrus") produced the SR22 and sold it to Kallassy. Kallassy alleges that the SR22 was defective. He claims that the SR22 vibrated severely while being flown and that, as a result of his operation of the SR22, he developed neurological injury to his hands and feet. Kallassy sued Cirrus in state court for product liability based on either design defect, manufacturing defect, or negligence. Cirrus properly removed the action to this Court.

Kallassy filed his designation of experts on April 1, 2005, in which he neither designated any retained or specifically employed experts nor provided any expert reports. Cirrus then moved to strike Kallassy's designation of experts. At the hearing on the motion to strike, the Court denied the request to strike the designation of experts, but instead ruled that the Court would limit any testimony offered by Kallassy to the type of designation that Kallassy made.[1] The Court confirmed this ruling in a written order issued June 14, 2005. Cirrus now moves for summary judgement based on insufficient evidence.

## *B. Summary Judgement Standard*

Summary judgement is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of showing there

---

[1]Specifically, at the hearing the Court stated: "I'm going to deny the motion. I will say, as I indicated before, I will limit these witnesses at trial, if they are ever called, to what I think is proper under the rule for that kind of designation." The Court went on to remark, "I also wonder what plaintiff is going to do if the defendants file a motion for summary judgement with an affidavit saying there's no design defect and no manufacturing defect. I guess there's also the issue about the – the defendant's haven't designated experts, either. I don't know what would happen with that.

"But if, say, hypothetically, they did file such a motion for summary judgement, I just don't know what the plaintiff would do at that point. I guess I can wait and see if that happens. I don't need to decide that today.

"So this is, I guess, a long-winded way of saying you've chosen a trial strategy with regard to expert designations and I'm going to let you live with that trial strategy. But you will end up stuck with the consequences at some point. Maybe they'll be just fine and dandy and perhaps they won't."

Today the consequences of Kallassy's trial strategy become clear.

is no genuine issue of material fact, and can meet that burden by pointing to the absence of evidence to support one or more essential elements of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but instead must present affirmative evidence, setting forth specific facts to show the existence of a genuine issue for trial. *Id*. at 324. All the evidence must be construed in the light most favorable to the nonmoving party. *See Williams v. Time Warner Operation*, 98 F.3d 179, 181 (5th Cir. 1996). The failure of the nonmoving party to make a showing sufficient to establish any of the elements on which they bear the burden of proof at trial requires the granting of summary judgment. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex*, 477 U.S. at 322.

### *C. The Requirements of Expert Testimony*

Federal Rule of Civil Procedure 26(a)(2) requires that parties disclose the identity of any experts who may be used to present evidence at trial. FED. R. CIV. P. 26(a)(2)(A). It also requires the accompaniment of the disclosure with a report for any witness "retained or specifically employed to provide expert testimony." FED. R. CIV. P. 26(a)(2)(B). Further, Rule 37(c)(1) makes clear that a party who fails to comply with these rules is generally precluded from using "as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1).

Federal Rule of Evidence 702 permits experts to testify as to "scientific, technical, or other specialized knowledge [that] will assist the trier of fact" if those opinions are deemed

sufficiently reliable by the court as part of its gatekeeper role. *See* FED. R. EVID. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).[2] Rule 701(c) reinforces this requirement by precluding witnesses not testifying as experts from giving any testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.

The requirements of expert testimony in the Federal Rules of Civil Procedure and the Federal Rules of Evidence work in concert. *See, e.g., McKnight v. Purdue Pharma Co.*, __ F. Supp. 2d __, 2006 WL 784838, *1 (E.D. Tex., March 21, 2006) ("An expert's report prepared in accordance with the requirements of Rule 26(a)(2), should also serve a purpose which may not have been contemplated when the rule was adopted, namely, permitting the court to evaluate the expert's testimony under Fed. R. Evid. 702 and the *Daubert-Kumho Tire* line of cases.") (citing *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). The Advisory Committee's comments to the 2000 Amendments of Rule 701 make clear that paragraph (c) was added "to eliminate the risk that the reliability requirements set forth in 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."[3] FED. R. EVID. 701 advisory committee's notes, 2000 amends.

---

[2] Specifically, the rule tests reliability via a three factor test: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

[3] Particularly instructive is the parenthetical "noting that 'there is no good reason to allow what is essentially surprise expert testimony.' [sic] and that 'the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process[.]'" FED. R. EVID. 701 advisory committee's notes, 2000 amends. (citing

In this case, these evidentiary and procedural rules constrain the evidence presented by the parties' witnesses. By way of amended scheduling order issued January 4, 2005, the Court provided for the plaintiff's designation of experts 150 days before trial, then set for August 29, 2005. On April 1, 2005, Kallassy submitted his designation of experts without identifying any as retained or specifically employed to provide expert testimony or submitting any accompanying reports. Subsequently, Cirrus also allowed the Court's deadline to pass without designating any experts to provide expert testimony. Whether done as a trial strategy, a cost saving measure, or for some other purpose, Kallassy's failure to designate witnesses to provide expert testimony now means that he has only very limited, if any, expert testimony available as evidence to support his position in the summary judgement motion.[4]

---

Joseph, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996)).

[4]Kallassy does not contend that he should now be allowed to submit expert testimony; accordingly, the Court need not undertake Fifth Circuit's four part test to determine the appropriateness of exclusion. *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998).

## IV. KALLASSY CANNOT MEET HIS BURDEN WITHOUT EXPERT TESTIMONY

### *A. Elements of Product Liability and Negligence*

Kallassy asserts claims for strict products liability and negligence. Texas has adopted section 402A of the Restatement (Second) of Torts providing strict liability for the sale of defective products. *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-789 (Tex. 1967). "Basically, Section 402A subjects to liability the seller or manufacturer of a product sold 'in a defective condition unreasonably dangerous' to an ultimate user or consumer whose person or property is physically harmed by the product." *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1272 (5th Cir. 1974); *see also Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984) ("To make out a strict liability cause of action, a party must establish that: (1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user."); *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 329 (Tex. App. – Austin 2002, pet. denied) (same).

"A negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer." *Syrie*, 748 F.2d at 307 (citing *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978)).

> The care taken by the supplier of a product in its preparation, manufacture, or sale is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Id.* (quoting *Gonzales*, 571 S.W.2d at 871.)  Both negligent manufacturing and negligent design require a showing of dangerous product.  *See* RESTATEMENT (SECOND) OF TORTS § 395 (negligent manufacture requires product involving "unreasonable risk of causing physical harm"; *id.* § 398 (negligent design "makes it dangerous"); *see also Gonzales*, 571 S.W.2d at 871-872 (Texas adopts Restatement).

### *B. Without Expert Testimony Kallassy Cannot Show Evidence of Defect as Required*

Sitting in diversity, the Court is guided by Texas law in determining whether expert testimony is required to show defect in this case.  In the context of judgment as a matter of law, the Fifth Circuit has noted: "[W]e apply federal standards of review to assess the sufficiency or insufficiency of the evidence in relation to the verdict, but in doing so we refer to state law for the kind of evidence that must be produced to support a verdict." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (internal quotation marks and citations omitted).

Texas courts have held that highly technical matters of design and engineering require scientific, technical, and/or specialized knowledge.  *Rangel v. Lapin*, 177 S.W.3d 17, 22 (Tex. App. – Houston [1st Dist.] 2005, pet. denied); *see also Sipes v. General Motors Corp.*, 946 S.W.2d 143, 154 (Tex. App. – Texarkana 1997, pet. denied) ("Issues may arise on technical matters of design and engineering that would be beyond evidence that lay witnesses with no expertise in these fields could offer.").  More specifically, Texas courts have required expert testimony to prove defect where the defect involves technical matters beyond the general experience of the jury.  *See* TEX. R. EVID. 702; *see also Nissan Motor Co. Ltd. v.*

*Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (requiring "competent expert testimony and objective proof that a defect caused the acceleration" in case involving unintended vehicle acceleration); *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 93-94 (Tex. 1974) (reversing judgment against car manufacturer because no expert testified that defect had been caused by unreasonably dangerous design or that alternative would have prevented the accident).

As part of his overall claims, Kallassy alleges that the excessive vibration causing his injury resulted from a design or manufacturing defect in the SR22. In order for a product to be defective it must be "unreasonably dangerous." *Syrie*, 748 F.2d at 306-307. The level at which aircraft vibration becomes sufficiently excessive as to constitute an unreasonably dangerous defect is a technical matter beyond the common experience of jurors. *See, e.g., Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 734 (Tex. App. – Amarillo 1999, pet. denied) (holding that the proper mechanical operation and repair of airplane engines are not with the experience of laymen); *Hager v. Romines*, 913 S.W.2d 733, 734-35 (Tex. App. – Fort Worth 1995, no writ) (holding that operation of an aircraft is not within the experience of the layman); *Walker v. Messerschmitt Bolkow Blohm GmBH*, 844 F.2d 237, 244 (5th Cir. 1988) (relying on testimony of experts to hold that jury had sufficient evidence to find improper design of helicopter's hydraulic systems); *see also, e.g., Nichols Const. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 347 (5th Cir. 1985) (finding that the only evidentiary support for theory of causation of airplane crash, the testimony of an expert witness, was purely speculative and thus insufficient to present question to jury). Here, however, Kallassy

presents no expert testimony to assist a jury.[5] Without expert testimony, Kallassy cannot prove the existence of defect, an element essential to his strict product liability claims.

Kallassy's inability to prove defect prevents recovery on his claim for the negligence cause of action as well.

> Although a negligence claim requires a different showing from a strict liability claim, it is not logical for a manufacturer to be held liable for failing to exercise ordinary care when producing a product that is not defective because: (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way; and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiff's injury because the negligence did not render the product "unreasonably dangerous." *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988). This analysis applies when a defective product theory encompasses and subsumes a negligence theory, that is, when the allegations and evidence are directed to whether the product is "unreasonably dangerous" and no other potentially negligent conduct is alleged or the subject of evidence. *See id.* & n. 8. In such a case, whether a plaintiff seeks recovery because of negligence or a theory of strict liability in tort, the burden is on the plaintiff to prove that the injury resulted from a defect in the product. *Simms v. Southwest Tex. Methodist Hosp.*, 535 S.W.2d 192, 197 (Tex. App. – San Antonio 1976, writ ref'd n.r.e.).

---

[5]Kallassy does offer testimony from witnesses he designated as nonretained experts. However, testimony from witnesses designated as experts does not necessarily make for expert testimony. These witnesses offer largely factual testimony as to their experience with the SR22, not expert testimony as to the unreasonably dangerous nature of the vibrations or the existence of a defect.

Further, testimony that a particular product is the "worst" among similar products by itself does nothing to establish defect. It is a truism that in any group of imperfect items, one among them is always going to be the "worst." Certainly, one among any group is not always defective.

*Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App. – Dallas 2004, pet. denied). Here, Kallassy alleges no other potentially negligent conduct beyond the defect alleged to have caused excessive vibration in the airplane.

### C. Without Expert Testimony Kallassy Cannot Show Evidence of Causation as Required

Under either negligence or strict liability theories, plaintiffs are required to prove causation.[6] *Horak v. Pullman, Inc.*, 764 F.2d 1092, 1095 (5th Cir. 1985). Under Texas law, "[l]ay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984).[7] Correspondingly, "when the causal link is beyond the jury's common understanding, expert testimony is necessary." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119-120 (Tex. 2004) (citing *Arce v. Burrow*, 958 S.W.2d 239, 252 (Tex. App. – Houston [14th Dist.] 1997), *aff'd in part, rev'd in part on other grounds*, 997 S.W.2d 229, (Tex. 1999)); *see also, e.g., Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836,

---

[6]Technically, strict liability requires a showing of producing cause and negligence requires a showing of proximate cause, but the distinction between the two is not significant here. *See Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 238 (5th Cir. 2003) ("In Texas, a showing of producing cause is necessary for recovery in a products liability case."); *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2003) (establishing a negligence cause of action includes showing damages proximately caused by the breach of duty.)

[7]As was the case above with defect, Texas law again guides the Court in determining whether expert testimony is required to show causation in this case. *See Hamburger*, 361 F.3d at 884.

841 (Tex. 1997) (remanding to the trial court because, without expert testimony on medical expenses, the plaintiffs had presented no evidence in support of the trial court's judgment); *Haddock v. Arnspiger*, 793 S.W.2d 948, 954 (Tex. 1990) (expert needed because the use of a flexible colonoscope for a proctological examination was beyond the "common knowledge of laymen"). "Therefore, in determining whether lay testimony is sufficient to prove causation, Texas courts look at the nature of the lay testimony and the nature of the injury." *Hamburger*, 361 F.3d at 884.

Texas courts have addressed the need for expert testimony to establish medical causation on multiple occasions. This Court recently reviewed the Fifth Circuit's survey of Texas case law on medical causation, stating that the Fifth Circuit

> held that medical expert testimony was not required to prove causation of neck injuries suffered in a car wreck. *Hamburger*, 361 F.3d at 884-86. It cited other Texas cases in which the plaintiff had immediate subjective awareness of injury at or about the time of the causative event and in which the causal relationship was obvious or could be inferred. *See Morgan v. Compugraphic*, 675 S.W.2d at 733 (plaintiff experienced respiration problems and swelling immediately after exposure to fumes); *Blankenship v. Mirick*, 984 S.W.2d 771, 776 (Tex. App. – Waco 1999, pet. denied) (plaintiff experienced pain in knees after collision shoved knees into dashboard); *Dawson v. Briggs*, 107 S.W.3d 739, 754 (Tex. App. – Fort Worth 2003, no pet.) (plaintiff experienced pain in jaw following auto accident); *Fidelity & Guaranty Ins. Underwriters, Inc. v. La Rochelle*, 587 S.W.2d 493, 494-96 (Tex. App. – Dallas 1979, writ dism'd) (plaintiff experienced back pain shortly after ping pong game that aggravated preexisting back injury). As the *Hamburger* court observed, "[i]n cases involving other types of injuries, Texas courts have refused to find lay testimony sufficient to prove causation." *Hamburger*, 361 F.3d at 885 (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497 (Tex. 1995) (frostbite); *Smith v. Southwestern Bell Tel. Co.*, 101 S.W.3d 698, 702 (Tex. App. – Fort Worth 2003, no pet.) (fibromyalgia); *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App. – Houston [1st Dist.] 2002, pet. denied) (bronchiolitis obliterans organizing pneumonia)).

*Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 556-57 (N.D. Tex. 2005); *see also Anderson v. Siemens Corp.*, 335 F.3d 466, 474 (5th Cir. 2003) ("Ordinarily, expert testimony is needed to satisfy the reasonable medical probability standard for establishing a causal link."); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 829 (E.D. Tex. 2002) (stating that expert testimony satisfying *Daubert* requirements is required to show causation).

Here, neither the conditions leading to the development of Kallassy's neurological injury, nor the alleged condition of neuropathy itself is within the layperson's average experience. Accordingly, expert testimony is required to establish that the alleged excessive vibration caused Kallassy's injury.[8]

Kallassy points to the affidavit of James A. Baker, M.D. (the "Baker Affidavit") and the letter of Richard C. Johnston, M.D. (the "Johnston Letter") as presenting sufficient evidence to create a genuine issue of material fact. Dr. Baker avers, "[b]ased upon the clinical history given to me by my patient, test results, and my observations and treatment of Mr. Kallassy for these injuries, it is my opinion, that yes, the chronic vibration neuropathy that he developed was, in reasonable medical probability, caused by the vibration that he sustained in piloting the airplane." (Baker Affidavit ¶ 4). Dr. Baker clearly relies on his expertise in making this assessment.

---

[8]The argument that expert testimony is required for both causation and defect is presented in Cirrus's Motion for Summary Judgement. Kallassy does not appear to dispute that position as it does not address the question of whether experts are necessary, but rather only directs the Court to evidence that they argue raises a genuine issue of material fact as to either causation or defect.

The Court disallows Dr. Baker's affidavit testimony as to causation as improper expert testimony. In his affidavit, Dr. Baker states that he has been "asked to address whether in my medical opinion . . . the neuropathy afflicting Mr. Kallassy . . . was proximately caused by vibration that he experienced in piloting his airplane" and that he used "clinical history given to me by the plaintiff" in making his determination.[9] (Baker Affidavit ¶ 3-4). It appears to this Court that Dr. Baker has made his medical determination based on information provided by the plaintiff and in response to a request made in preparation for litigation. *See, e.g., Kiser v. Gen. Motors Corp.*, 2000 WL 1006239, *2 (E.D. La. Jul. 19, 2000) (finding that an expert was retained or specifically employed under Federal Rule of Civil Procedure 26(b)(4)(B) and that "[i]t is of no moment that [expert] has not been assigned to work exclusively on this litigation or that he did not receive additional compensation for work on this case," where counsel arranged for observations and data necessary for expert opinion). Accordingly, the Court concludes that Baker is a retained or specially employed expert under Federal Rule of Civil Procedure 26(a)(2)(B). As Kallassy did not provide a report, the Court excludes Baker's Affidavit from consideration for summary judgement under Federal Rule of Civil Procedure 37(c)(1).

The Court also holds that Dr. Baker is not a "treating physician" exempt from Rule 26(a)(2)(B). The Advisory Committee Notes to Federal Rule of Civil Procedure 26(a)(2)

---

[9] No further information is provided to the Court about the data which was given to Dr. Baker. It is precisely this sort information that expert reports routinely unveil.

give the example of a treating physician as a party not subject to the reporting requirement.

FED. R. CIV. P. 26 advisory committee's notes, 1993 amends., subdiv. (a), para. (2).

> Thus, to the extent that a treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a "specially employed" expert and is not subject to the written report requirements of Rule 26(a)(2)(B), "notwithstanding that the witness may offer opinion testimony under [the Federal Rules of Evidence]." *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). However, when the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specifically retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B).

*Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995). A treating physician cannot be asked to answer questions about medical issues not involved in his diagnosis and treatment. *Young v. United States*, 181 F.R.D. 344, 346-347 (W.D. Tex. 1997). While it is possible for a doctor to testify regarding cause within his or her role as treating physician, here the Court believes that Dr. Baker's determination on legal, proximate cause using medical information provided by Kallassy exceeds the limits of that role. *See Salas*, 165 F.R.D. at 33.

Dr. Johnson's letter also fails to raise a genuine issue of material fact regarding causation. First, Dr. Johnston's unsworn, unverified letter is not competent summary judgement evidence. *See* FED. R. CIV. P. 56 (e); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). Second, Dr. Johnston's letter is not proper expert evidence under Rule 702 because the letter does not appear to rely on Dr. Johnston's expertise. The diagnosis process seems to have occurred largely outside Dr. Johnson's care. Dr. Johnson says his own exam was "unremarkable" and then he referred Kallassy to a neurologist to for "further testing." (Johnston Letter ¶ 2). From this Dr. Johnston concludes that it is his "feeling that [Kallassy]

had [sic] peripheral neuropathy in a stocking-glove distribution due to prolonged vibratory insult to the peripheral nerves." (Johnston Letter ¶ 2). Aside from his conclusion, Dr. Johnston recites only facts and makes no reference to "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. Accordingly, the Dr. Johnston's letter is not competent expert testimony under Rule 702.

Alternatively, the Court finds that both Dr. Baker's and Dr. Johnston's testimony fail the reliability requirements of Federal Rule of Evidence 702. Specifically, Dr. Baker's assertion that he based his opinion upon "clinical history . . . , test results, and my observations and treatment of Mr. Kallassy," Baker Affidavit ¶ 4, does not by itself establish that "(1) the testimony is based upon sufficient facts or data, or (2) the testimony is the product of reliable principles and methods." FED. R. EVID. 702; *see also Daubert*, 509 U.S. 579 (1993). Additionally, Dr. Baker describes his own expertise as an orthopedic surgeon having extensive experience with sport related injuries. A doctor does not qualify as an expert in all medicine just because the doctor qualifies as an expert in one medical field. *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1113 (5th Cir. 1991) (per curiam), *overruled on other grounds by Daubert*, 509 U.S. at 587 n.5; *Hucker v. City of Beaumont*, 147 F. Supp. 2d 565, 569 (E.D. Tex. 2001). Here, it is not at all evident that Dr. Baker's knowledge in orthopedics (i.e., bones) qualifies him to determine the cause of Kallassy's neuropathy (i.e., a nervous system disorder). Without the required assurances as to reliability, this Court will not allow Dr. Baker's affidavit as testimony on causation.

The Johnston Letter is similarly unreliable. First, Dr. Johnston omits any explicit basis for his conclusion, instead describing only a broad history of treatment, the significant parts of which were preformed by another unnamed physician. Dr. Johnston's conclusion also lends little confidence as he states only his "feeling" as to what Kallassy "had." (Johnston Letter ¶ 2). Finally, Dr. Johnston professes no expertise in neuropathy. His own specialty is internal medicine, having referred Kallassy elsewhere for further examination. (Johnston Letter ¶ 2).

Kallassy offers only the Baker Affidavit and Johnston Letter as expert testimony that the SR22 caused his alleged injuries. Accordingly, Kallassy cannot make the required evidentiary showing to support the causation element within either the strict liability or negligence causes of action. Due to this and the above discussed insufficiency of expert evidence necessary to prove product defect, the Court grants Cirrus's Motion for Summary Judgement.

Signed May 30, 2006.

_____
David C. Godbey
United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 16